# BOB FLOYD, ET AL.

## v.

# NORTHERN NECK INSURANCE COMPANY

Record No. 920946

February 26, 1993

Present: All the Justices

*Michael S. Irvine (Robey & Irvine,* on brief), for appellants.
*David B. Carson (Ronald M. Ayers,* on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is an appeal in a declaratory judgment proceeding in an insurance case. We must decide whether the trial court erred in ruling in favor of the insurer and in applying to a child care situation a business pursuits exclusion contained in a homeowner's policy.

The facts were stipulated. Residing near Buena Vista, Randolph J. Coffey and Linda Coffey, his wife, were friends and neighbors of appellants Bob Floyd and Phyllis Floyd, his wife. The Floyds are parents of appellant Hollie Nichole Floyd, who was 15 months old at the time of the occurrence giving rise to the controversy; the Coffeys are parents of Elizabeth Coffey, who was nine years of age at the time. The Floyds are not relatives of the Coffeys.

For some months prior to the incident in question, Linda Coffey kept Hollie at the Coffey home while the Floyds were at work. She provided day care or baby-sitting services regularly for which the Floyds paid her $5.00 per day. This sum was paid primarily to compensate the Coffeys for expenses in providing food and other necessities to Hollie. Mrs. Coffey did not keep any other child.

On May 17, 1990, Mrs. Floyd left Hollie with Mrs. Coffey for the day. During the day, Mrs. Coffey and her daughter Elizabeth were cutting the grass at the Coffey home using separate riding lawn mowers. As Hollie was playing in the back yard, Mrs. Coffey saw Hollie running toward Elizabeth's mower. Mrs. Coffey stopped her mower "to go after" Hollie. Before Mrs. Coffey could reach Hollie, she was struck and injured by the mower Elizabeth was operating.

On the day in question, appellee Northern Neck Insurance Company had in effect a homeowner's policy with Mr. and Mrs. Coffey as the named insureds. None of the Floyds is an insured under the policy. The policy provided coverage, *inter alia*, for personal liability and medical payments.

The following language was contained in a policy endorsement:

"NO COVERAGE FOR HOME DAY CARE BUSINESS

"If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an insured to a relative of an insured is not considered a business pursuit.

"Therefore, with respect to a home day care enterprise which is considered to be a business pursuit, this policy:

"1. does not provide Section II-Liability Coverages because business pursuits of an insured are excluded under exclusion 1.[d.] of Section II-Exclusions; . . ."

The insurance contract provided, under exclusion 1.d.: "This policy does not apply: 1. Under Coverage E-Personal Liability and Coverage F-Medical Payments to Others: . . . d. to bodily injury or

property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits.'' The foregoing exclusion, with its exception, is the focus of this dispute.

In July 1990, the insurer filed a petition for declaratory judgment in the court below joining as defendants the three Coffeys and the three Floyds. The insurer asked the court to declare that no coverage was afforded to the Coffeys by the policy, and that it had no obligation under the policy to defend the Coffeys against any claim made by Hollie or to pay any judgment which may be entered against any of the Coffeys for injuries or damages to Hollie arising out of the accident.

In a response to the petition, the Floyds moved the court to declare that coverage existed, and that the insurer had an obligation to defend any claim made by Hollie and to pay any judgment obtained against the Coffeys as the result of Hollie's injuries.

Following briefing and argument of counsel, the trial court ruled that no coverage for the incident was provided by the insurer's policy. The court applied the exclusion, finding from the stipulated facts that Mrs. Coffey's child care enterprise was a ''business pursuit'' within the meaning of the policy. We awarded the Floyds an appeal from the March 1992 order granting the insurer's petition.

Commonly found in personal liability insurance policies, this type of exclusion generally provides that the liability coverage does not apply to any ''business pursuits'' of the insured, other than activities which ordinarily are incident to nonbusiness pursuits. Job A. Sandoval, Annotation, *Construction and Application of ''Business Pursuits'' Exclusion Provision in General Liability Policy*, 48 A.L.R.3d 1096. This barring of business liability in personal liability policies removes coverage, not essential to the purchasers of the insurance, that ordinarily would require specialized underwriting and rating, thus enabling premiums to be kept at reasonable levels. *Id.* at 1098-99.

While we have addressed the business pursuits exclusion in a child care setting in two prior cases, *Smith* v. *Allstate Insurance Co.*, 241 Va. 477, 403 S.E.2d 696 (1991), and *Virginia Mutual Insurance Co.* v. *Hagy*, 232 Va. 472, 352 S.E.2d 316 (1987), we have not been confronted with the precise language of the present provision. Other jurisdictions, however, have interpreted the same or similar language in a child care context using various analyses.

For example, some courts focus upon the specific activity of the caretaker that caused the child's injury. In *Gulf Insurance Co. v. Tilley*, 280 F. Supp. 60 (N.D. Ind. 1967), *aff'd per curiam*, 393 F.2d 119 (7th Cir. 1968), a child was burned by an overturned pot of hot coffee being prepared by the insured who conducted a baby-sitting business. The court determined that the preparation of coffee is an activity not ordinarily associated with a baby-sitter's functions. Thus, the exception to the exclusion applied and coverage was afforded. *Id.* at 65.

Other courts have not focused on the particular activity of the tortfeasor but have taken a broader view of the child care enterprise. Those courts have reasoned that a lack of proper supervision in a home child care situation is an activity directly related to the business pursuit of professional child care. In *Moncivais v. Farm Bureau Mutual Insurance Co.*, 430 N.W.2d 438 (Iowa 1988), a child placed in a crib with another infant became entangled in twine and choked to death while the caretaker was tending to household chores. The court applied the exclusion and denied coverage, ruling the activity that caused the child's death was the negligent care and supervision of the child. The court stated: "Maintaining proper supervision and a safe environment for children are basic elements of a child day care operation." *Id.* at 442.

A few courts have opined that the exception provision contained in the exclusion is ambiguous because it is susceptible of two reasonable interpretations. Those courts adopt the interpretation favorable to the insured and grant coverage. *See, e.g, Foster v. Allstate Ins. Co.*, 637 S.W.2d 655, 657 (Ky. Ct. App. 1981) (child fatally injured in fall in home of insured conducting baby-sitting business).

In the present case, the Floyds do not dispute on appeal that the trial court correctly ruled the arrangement with the insured Coffeys constituted "child care" and, thus, a "business pursuit" within the meaning of the policy. The Floyds contend, however, as they did in the trial court, that the exclusion's exception applies to afford coverage to the Coffeys.

■ The application of the exception was not mentioned either in a letter opinion of the trial court or in the court's final order. But, since the applicability of the exception was advocated by the Floyds below, we must assume from the ruling of no coverage that the trial court concluded the exception did not apply.

■ Specifically, the Floyds contend that the trial court should have ruled "that the activity of mowing the grass which caused the injuries to Hollie Floyd was not related to the business pursuit of providing child care and therefore the exception to the exclusion is applicable." We agree.

■ Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Suggs* v. *Life Ins. Co. of Va.*, 207 Va. 7, 11, 147 S.E.2d 707, 710 (1966). Reasonable policy exclusions not in conflict with statute will be enforced; to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope. *State Farm Mut. Auto. Ins. Co.* v. *Gandy*, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989); *Tilley*, 280 F. Supp. at 64. However, the fact that courts in different jurisdictions have reached different results in construing similar policy language does not create an ambiguity, especially when a plain reading of the disputed provision effectuates the intention of the parties. *See Allstate Ins. Co.* v. *Kelsey*, 678 P.2d 748, 752 (Or. Ct. App. 1984).

Here, the paragraph at issue consists of two parts. There is a blanket exclusion of coverage with respect to the Coffeys' "business pursuits" ("[t]his policy does not apply . . . to bodily injury . . . arising out of business pursuits of any Insured"), and an exception to that blanket exclusion ("except activities therein which are ordinarily incident to non-business pursuits"). Clearly, the exception reduces the breadth of the immediately preceding clause.

■ Construing both parts together, and giving each component its plain meaning, we hold they reasonably can be read to state the following proposition that the parties obviously intended: No liability coverage will be afforded with respect to an insured's "business pursuits," but, as an exception to this broad rule, coverage will be extended to liability that arises out of an act or omission that ordinarily is not associated with the insured's business enterprise, even though the act or omission is connected in some manner with the insured's "business pursuits." *See Tilley*, 280 F. Supp. at 64, and *State Farm Fire & Casualty Co.* v. *Moore*, 430 N.E.2d 641, 645 (Ill. Ct. App. 1981), each interpreting an exclusion identical to the one at issue here.

To determine the applicability of the exception, the appropriate inquiry is not whether the insured was engaged in a business pursuit at the time of the accident, but whether the particular activity was nevertheless, in the language of the exception, one ordinarily incident to nonbusiness pursuits. *Moore*, 430 N.E.2d at 645.

■ In this case, the specific activity that caused the infant's injuries was mowing the insureds' lawn. That activity is not ordinarily associated with child-care functions and, when viewed against the background of the entire exclusion, clearly is an activity that ordinarily was incident to nonbusiness pursuits. This is the only interpretation of the disputed provision that gives effect to the exception.

If we were to say, taking a broad view of the exclusion as advocated by the insurer, that the infant was injured because of lack of proper supervision, and that such supervision is directly related to the business pursuit of professional child care, we would render the exception meaningless; there must be some act or omission that is covered by the exception, even though it somehow may be connected with a ''business pursuit.''

Accordingly, we conclude that the trial court erred in granting the insurer's petition for declaratory judgment. We will reverse the order appealed from and will enter a final judgment here declaring that coverage is afforded by the insurance policy in issue, and that the insurer has an obligation to defend its insureds and to pay any judgment which may be entered against any of them for injuries or damages to any of the Floyds arising out of the incident of May 17, 1990.

*Reversed and final judgment.*