VIRGINIA FARM BUREAU MUTUAL INSURANCE CO., ET AL.

V.

RICHARD FRAZIER, ET AL.

Record No. 921864

February 25, 1994

Present: All the Justices

*Steven W. Bancroft (Alicia M. Lehnes; Lewis, Trichilo, Bancroft & McGavin,* on brief), for appellants.
*Patrick G. Merkle,* for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this automobile insurance case, the question presented is whether the trial court erred in permitting parents to recover under the property damage provisions of uninsured motorist coverage for medical expenses and loss of services as the result of injury to their minor child.

The facts are undisputed. In March 1986, Lisa D. Frazier, age 17, was injured in a motor vehicle collision in Marshall, Virginia, while riding in a car operated by Michael C. King, an uninsured motorist. Appellees Richard Frazier and Karin Frazier, who are Lisa's parents, incurred medical expenses of $34,190.44 for the treatment of their daughter's injuries.

The daughter qualified as an insured under two separate policies of automobile insurance jointly issued by appellants Virginia Farm

Bureau Mutual Insurance Company and Early Settlers Insurance Company (collectively, the insurer). Each policy contained uninsured motorist coverage with bodily injury limits of $25,000 for each person injured as the result of one accident.

In January 1989 in the Circuit Court of Fauquier County, the daughter obtained a $27,000 judgment against King in a tort action for her accident related injuries. Because the insurer's total stacked bodily injury limits available for uninsured motorist coverage was $50,000, the insurer paid $27,000 to satisfy the Fauquier judgment.

Following proceedings in the Superior Court of the District of Columbia and in the United States Bankruptcy Court for the Eastern District of Virginia involving King, which are not relevant here, the parents obtained a default judgment against King in May 1991 in the Circuit Court of Spotsylvania County for $36,015.49, which included the medical expenses of $34,190.44, and apparently a sum for loss of services.* In June 1991, the insurer paid the parents $23,000, thus exhausting the bodily injury limits under the uninsured motorist coverage.

In the meantime, the parents had instituted the present action on the insurance contracts against the insurer in the Circuit Court of Page County. In an amended motion for judgment filed in July 1991, the parents sought to enforce the Spotsylvania judgment, subject to a credit for the June 1991 payment.

In a July 1992 hearing on the parents' motion for summary judgment, the parties agreed that there was no factual dispute and that the sole issue involved interpretation of the insurance contracts, which have identical substantive provisions. Upon consideration of the pleadings, the prior proceedings, and argument of counsel, the court ruled in favor of the parents. The court found that the parents had "the right to recover under the Property Damage limits of the applicable policies," which totalled $35,000 when stacked.

Therefore, the court entered judgment against the insurer for $24,868.67, after applying the credit. This sum represented the amount of the unpaid Spotsylvania judgment plus prejudgment interest of about $13,000. We awarded the insurer this appeal from the final order, limited to consideration of the foregoing issue.

---

* Two causes of action ordinarily arise as the result of an injury by wrongful act to an unemancipated minor: One cause of action on behalf of the minor to recover damages for the injury, including pain and suffering and impairment of earning capacity after attaining majority, and the other on behalf of the parent for loss of services during minority and necessary expenses incurred for the minor's treatment. *Moses* v. *Akers*, 203 Va. 130, 132, 122 S.E.2d 864, 865-66 (1961).

In the interpretation of any contract, including contracts of insurance, the document must be construed as a whole. The following provisions of the uninsured motorist coverage of the insurance contracts at issue are pertinent to this controversy.

They provide that the insurer will pay "in accordance with" the Virginia uninsured motorist statute, "all sums which the insured . . . shall be legally entitled to recover as damages from the . . . operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle." Among the exclusions, the policies provide that the insurance does not apply "to the first two hundred dollars of the total amount of all property damage as the result of any one accident."

According to a section labelled "Limits of Liability," the policies provide that the "limit of liability for bodily injury stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident." That section also provides that the "limit of liability for property damage stated in the declarations as applicable to each accident is the total limit of the company's liability for all damages because of property damage to all property of one or more insureds as the result of any one accident."

Under the "Definitions" section, the policies provide that " 'property damage' means injury to or destruction of (1) an insured motor vehicle owned by the named insured or his spouse, if a resident of the same household, and the contents of such motor vehicle, and (2) any other property (except a motor vehicle) owned by an insured and located in Virginia."

Finally, under the section dealing with proofs of loss and proofs of claim, the policies provide that the "insured or other person making claim for damage to property shall file proof of loss with the company . . . setting forth the interest of the insured . . . in the property affected, any encumbrances thereon, the actual cash value thereof at time of loss . . . and cause of such loss . . . . Upon the company's request, the insured shall exhibit the damaged property to the company."

The trial court, relying on *Watson* v. *Daniel,* 165 Va. 564, 183 S.E. 183 (1936), ruled that the Spotsylvania judgment was "a judgment for property damage sustained by these plaintiffs for pecuniary losses to their estate incurred for medical care and other expenses in behalf of their infant daughter." In deciding that the parents have the right to collect under the property damage coverages, the trial court said:

"There is no language in the policy that makes a parents' action for loss of services and medical expenses 'personal injury' rather than 'property damage.' "

In *Watson,* the sole issue was whether a one-year or five-year statute of limitations applied to a father's claim for recovery of medical expenses and loss of services when his minor child was injured in an automobile accident. This Court held that the father's cause of action was "for the pecuniary loss suffered by his estate" and that the five-year limitation applied. *Id.* at 573, 183 S.E. at 187.

On appeal, the parents contend that *Watson* is controlling. In addition, they distinguish the cases from other jurisdictions relied upon by the insurer. In those cases, unlike this, according to the parents, the insurance policies provided that medical expenses and loss of services must be paid under the bodily injury limits. The parents point out that no such provision is included in the instant policies under the uninsured motorist coverage for bodily injury but that such limiting language is, in fact, included in the "Limits of Liability" section of the basic policies, as follows: "The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, *including damages for care and loss of services,* because of bodily injury sustained by one person as the result of any one occurrence. . . ." (Emphasis added.) The parents reason that the omission of such limiting language in the uninsured motorist section of the policies means that the insurer intended that medical expenses and loss of services would not be paid under the bodily injury uninsured motorist coverage but under the property damage coverage.

In addition, pointing to the policy definition of "property damage," *supra,* the parents say that their losses "fit nicely within the 'any other property' clause of the 'property damage' provisions of the UM coverage." The parents maintain that they "have been awarded damages reflecting losses to their intangible personal estate which they owned and kept in Virginia as required by this provision."

■ We do not agree with the parents. At the outset, we note that the parents make no claim that the pertinent policy provisions are ambiguous; and the trial court found no ambiguity. Thus, we must interpret the contracts by examining the explicit language of the agreements. *Graphic Arts Mut. Ins. Co.* v. *C.W. Warthen Co., Inc.,* 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990).

■ "Courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insur-

ance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.' " *Floyd* v. *Northern Neck Ins. Co.,* 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993) (quoting *Suggs* v. *Life Ins. Co. of Va.,* 207 Va. 7, 11, 147 S.E.2d 707, 710 (1966)).

▮ Initially, we must examine the nature of the parents' action for damages sustained by reason of the loss of their minor daughter's services and by reason of incurring or paying the medical expenses for her care and treatment. The parents correctly point out that the claims constitute a chose in action and damage to their intangible personal property. *Watson,* 165 Va. at 568-69, 183 S.E. at 185. An intangible asset lacks physical existence; intangible property has no intrinsic or marketable value, but is merely the representative or evidence of value. *Black's Law Dictionary* 808-09 (6th ed. 1990).

▮ Next, employing the settled principles of contract interpretation, we must examine the policies to see if such claims are covered as property damage under the uninsured motorist provisions. According to the definitions section, "property damage" means injury to or destruction of "an insured motor vehicle," and "the contents of such motor vehicle," clearly items of tangible, not intangible, personal property. Under the second part of the definition, "property damage" means "any" other property, except a motor vehicle, "owned by an insured and located in Virginia." The parents claim that the language "any other property" includes intangible personal property and that if the insurers meant to restrict that language to tangible personal property, they should have so provided in the contracts. A focus upon the definitions section, as well as other provisions of the contracts, will demonstrate the fallacy of this contention.

Under the definitions section, the insured motor vehicle and its contents, tangible property, are covered whether the damage occurs in Virginia or elsewhere. But the "any other property" must be "located in Virginia" to be covered. According to the parents' argument, if the parents' "intangible personal estate" or "chose in action" has a situs outside the Commonwealth of Virginia, then the claims would not be covered; if those intangible items were determined to have a situs within the Commonwealth, there would be coverage. It is illogical to interpret these contracts so that coverage depends upon the fortuity that the parents' estate or chose in action is "located in Virginia."

▮ Furthermore, examination of other pertinent provisions reveals the absurdity of classifying these claims as "property damage." The proofs of loss and proofs of claim section requires that the claimant

set forth "the actual cash value" at the time of loss of the damaged item and that "the insured shall exhibit the damaged property to the company." Those provisions do not contemplate that intangible property, which is a nonphysical asset, be exhibited to an insurer. Rather, they plainly contemplate loss to tangible personal property, the cash value of which can be easily determined and which can be displayed to an insurer's representative.

■ And, there is the provision for a two hundred dollar deductible applicable to some property damage claims under the uninsured motorist coverage. Such a provision in insurance contracts is indigenous to physical damage coverage for injury to tangible personal property, not intangible property, caused by perils such as collision, fire, and theft.

■ Therefore, we hold that the parties to these insurance policies intended that the uninsured motorist coverage for property damage under the contract terms applies to damage to tangible personal property only, not damage to intangible personal property.

■ *Watson* is not controlling. The sole issue in that case was which of two statutes of limitation applied. Because of the law on the subject in 1936, the Court had to decide whether the father's claims for medical expense and loss of services would survive and pass to his personal representative in the event of the father's death. *Watson,* 165 Va. at 567, 183 S.E. at 184. In ruling on that issue, the Court had to decide whether the damage was "direct" or "consequential." *Id.* at 569-72, 183 S.E. at 185-86. After 1977, however, survivability is no longer germane in determining which statute of limitations applies and the problem of determining direct or indirect injury has been eliminated. *Pigott* v. *Moran,* 231 Va. 76, 80, 341 S.E.2d 179, 181 (1986). The holding of *Watson* is codified in § 8.01-243(B), a statute of limitations. The section provides: "Every action for injury to property, including actions by a parent . . . of an infant against a tortfeasor for expenses of curing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years after the cause of action accrues." The interpretation of insurance policies, however, containing unambiguous contract language, is not governed by case law or non-insurance statutes dealing with limitations of actions.

■ Finally, we reject the parents' argument based upon an apparent inconsistency due to the absence of limiting language in the policy provisions under the uninsured motorist coverage for bodily injury. As we have said, contract provisions should be construed together and the language will be harmonized to carry out the parties' intention. Here, the parties' intention is plain.

Consequently, we conclude that the trial court erred in permitting the parents to recover under the property damage provisions of this uninsured motorist coverage for medical expenses and loss of services as the result of injury to their minor child. The judgment below will be reversed and final judgment will be entered here for the insurers.

*Reversed and final judgment.*

CHIEF JUSTICE CARRICO, dissenting.

If for no other reason than to maintain consistency in the law, I would apply the same rule in this case as we applied in *Watson v. Daniel,* 165 Va. 564, 183 S.E. 183 (1936), a rule that is now codified in § 8.01-243(B). Under *Watson* and § 8.01-243(B), the claim of parents for medical and other expenses incurred in behalf of their infant child is considered a property damage claim for purposes of determining the appropriate statute of limitations.

Furthermore, I think logic supports the view that such a claim should be considered a property damage claim for all purposes. It is the child who has suffered personal injury in a situation like the one at hand. The injury to the parents is not to their bodies but to their pocketbooks, their estate. And, as the parents say in the present case, their losses "fit nicely within the 'any other property' clause of the 'property damage' provisions of the UM coverage" provided by their policy.

Accordingly, I would affirm the judgment of the trial court.