# CIRCUIT COURT OF WARREN COUNTY

Erie Insurance Exchange

v.

Theodore J. Young et al.

May 24, 2005

Case No. (Chancery) 04-190

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court for trial on May 4, 2004. The material facts were stipulated to, and counsel appeared and presented their arguments. Erie claims that its insurance contract was breached because its insured failed to comply with the notice of occurrence provisions of its policy and that, even if the notice provision was not breached, the act of driving a tractor under the circumstances was incident to a business pursuit and was not covered by its homeowners policy. Upon consideration, the Court has made the following decision finding that there is no coverage under the Erie Insurance Policy because the insured failed to give timely notice of the accident, but that, had notice been given, the act of driving the tractor at the time of the accident did not arise out of a business pursuit of the insured.

*I. Statement of Material Facts*

The following facts were either stipulated or are not in dispute.

Erie Insurance Exchange is a reciprocal insurer licensed to do business and doing business in the Commonwealth of Virginia.

On January 28, 2004, Theodore J. Young, Administrator of the Estate of Ted Alan Young, filed a Motion for Judgment in this Court against Cody Ryan

Matthews and Carlton L. Wines, Warren County Law No. 04-16 (the "underlying case").

Cody Ryan Matthews is and at all times relevant hereto was a resident of 736 Thompson Hollow Road, Bentonville, Virginia.

Carlton L. Wines and Tammy L. Wines are and at all times relevant hereto were residents and the owners of a home located at 343 Thunderbird Drive, Bentonville, Virginia 22610-1707. Erie issued to Carlton L. Wines and Tammy L. Wines a HomeProtector Ultracover policy of insurance, policy number Q55 1206535 V, with effective dates of July 12, 2001, through July 12, 2002. At the time of the July 6, 2002, accident, Carlton L. Wines also owned 37 acres on Louwill Lane in Bentonville, Virginia, which is five miles from the Wines' residence at 343 Thunderbird Drive, Bentonville, Virginia. Carlton L. Wines does not use the Louwill Lane farm for any purpose other than raising cattle and hunting.

At the time of the July 6, 2002 accident, Carlton L. Wines kept between five and twelve cattle, plus their calves, on a field at the Louwill Lane farm. Mr. Wines sold his calves at the local stockyard.

On July 6, 2002, a 58-60 horsepower John Deere farm tractor owned by Carlton L. Wines was located at a house owned by Howard Jenkins on Tree Farm Lane in Bentonville, Virginia. Mr. Wines was not paid by Mr. Jenkins for use of the farm tractor. Mr. Jenkins had on occasion borrowed the farm tractor in the past. Carlton L. Wines asked Cody Ryan Matthews, his nephew, to drive the farm tractor from Mr. Jenkins' house on Tree Farm Lane to the Louwill Lane farm. Cody Ryan Matthews was not paid to move the farm tractor, but did so as a favor to his uncle Carlton Wines.

To travel from Tree Farm Lane to the Louwill Lane farm, Cody Ryan Matthews had to drive the farm tractor on the Bentonville-Browntown Road for a distance of approximately .4 miles. The Bentonville-Browntown Road is a two-way road on which the Louwill Lane Farm is located, and on which Carlton L. Wines' father resides.

The accident alleged in the underlying case occurred on Bentonville-Browntown Road while Cody Ryan Matthews was driving the tractor to the Louwill Lane farm. Carlton Wines and Cody Matthews and one of Cody's friends were going to a fireworks display that evening. On the way, Mr. Wines dropped Cody off to retrieve the tractor. Returning the tractor to the Louwill Lane farm was the only farm-related activity planned or undertaken that day.

The John Deere tractor driven by Cody Ryan Matthews at the time of the July 6, 2002, accident was not registered with the Virginia Department of Motor Vehicles.

Carlton L. Wines used the John Deere tractor at the Louwill Lane farm to tend the field that the cattle were in or to unload hay from a trailer. The hay was stored at the Louwill Lane to feed the cattle in the winter. The tractor was kept primarily at Carlton L. Wines' father's house on the Bentonville-Browntown Road in Bentonville, Virginia, where it was used for tasks, including but not limited to tasks such as cleaning the barnyard and making hay. The tractor would only travel between the Louwill Lane farm, Carlton L. Wines' father's house, and, on occasion, the house of Mr. Howard Jenkins.

The underlying case was filed in the Warren County Circuit Court on January 28, 2004. On January 31, 2004, Carlton L. Wines was served with a copy of the Motion for Judgment in the underlying case. He first provided Erie with notice of the July 6, 2002, accident and requested a defense and indemnity under the Policy for the claims made in the underlying case in early February 2004, sometime between February 4th and February 11th.

The "Notice Provision" of the Erie Policy states as follows:

(5) What to do when an occurrence, offense, claim, *or suit* happens.

When there is an occurrence, offense, claim, *or suit*, anyone we protect will:

1. Notify us or our Agent in writing as soon as possible stating:

a. Your name and policy number;

b. The time, place, and circumstances of the occurrence, offense, claim, or suit;

c. Names and addresses of injured persons and witnesses.

Ex. A at 17 (emphasis added).

In addition, under the Section of the Policy called, "Rights and Duties B Conditions B Section II," the policy provides as follows:

(4) Suit Against Us. We may not be sued unless there is full compliance with all the terms of this policy.

Carlton L. Wines learned of the accident on July 6, 2002, but did not provide notice to Erie of the accident prior to February 2004 because he did not believe that the tractor was covered under the Policy. Mr. Wines was not aware of any pending suit prior to being served with suit papers on January 31, 2004.

The notice of suit given by Carlton L. Wines to Erie Insurance Exchange was within two weeks of its filing, and, as such, was timely notice of the suit as required under the HomeProtector Ultracover policy issued by Erie. On 2004, Erie notified Wines that it was defending the underlying case under a reservation of rights.

## II. Conclusions of Law

### A. Policy Is Not Ambiguous

In *Lumberman's Mut. Cas. Co. v. Keller*, 249 Va. 458, 460, 456 S.E.2d 525 (1995), citing *Graphic Arts Mutual Ins. v. C. W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990), the Supreme Court stated:

> "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill v. State Farm Mutual Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989). Additionally, in the absence of an ambiguity . . . we must interpret the contract by examining the language explicitly contained therein. "[Where] an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Co. v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965) (citations omitted).

The Virginia Supreme Court has held on many occasions that, "because the principal purpose of insurance is protection and insurance policies are drafted by insurance companies, if the language of a policy is capable of different interpretations, we will construe it in favor of coverage or indemnity and against a limitation of coverage." *United Services Auto. Ass'n v. Webb*, 235 Va. 655, 657, 369 S.E.2d 196, 197 (1988); *see also Government Employees Ins. Co. v. Moore*, 266 Va. 155, 165, 580 S.E.2d 823, 828 (2003) (holding that courts "have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it"). However, this public policy can never be employed to contravene the clear language of the policy.

The Policy plainly and unambiguously requires notice of an "occurrence," notice of a "claim," and notice of a "suit." This provision is written in the disjunctive, so these are separate and independent obligations.

Under Virginia law, it is clear that compliance with the provision requiring notice of a "suit" does not cure or minimize a substantial and material violation of the provision requiring notice of an "occurrence."

B. *Timely Notice of the Accident Was a Condition Precedent to Coverage*

Construing similar notice provisions in insurance policies, the Supreme Court of Virginia has consistently held that the failure to give timely notice of an accident vitiates coverage for that accident. In *Harmon v. Farm Bureau Mut. Auto. Ins. Co.*, 172 Va. 61, 200 S.E. 616 (1939), the insurance policy at issue contained the following provision:

> No action or actions on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the assured shall show compliance with all the requirements of this policy. . . .

*Id.* at 64. The Harmon policy required immediate notice "upon the occurrence of an accident covered by this policy. . . ." *Id.* at 63. While not using the term "condition precedent," the Virginia Supreme Court held that violation of the notice provision defeated coverage:

> It is apparent that the provisions in the policy in question are an essential part of the contract of insurance and, by the express terms of the policy, a failure to comply with its provisions forfeits the right of recovery.

*Id.* at 65. In *Harmon*, the notice provision read together with the provision precluding suit against the insurer unless there was "compliance with all the requirements of this policy" meant that the insured had no coverage unless timely notice of the accident was given. *Id.*

As in *Harmon*, the Erie policy provides that Erie may not be sued unless there is "full compliance" with "all" the Policy terms. The Policy additionally provides that Erie agrees to provide coverage "in return for" compliance with "all the terms of the Policy." This language plainly and unambiguously provides that the insured has coverage under the policy if he can show full compliance with all the terms of the Policy, and a failure to comply with the terms of the Policy, including the notice provision, vitiates that coverage.

In *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 423 S.E.2d 188 (1992), the State Farm homeowner's policy contained a notice provision which provided in relevant part as follows:

> *Duties after loss.* In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:
>    a. given written notice to us or our agent as soon as practicable. . . .

*Id.* at 503.

The Virginia Supreme held that "such a requirement of timely notice of an accident or occurrence is a condition precedent to an insurance company's liability coverage requiring `substantial compliance by the insured'." *Id.* at 504.

Similarly, in *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 223 Va. 317, 288 S.E.2d 469 (1982), the policy contained the following notice provision under the heading "Conditions:"

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured . . . shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

*Id.* at 323, 288 S.E.2d at 473. The Virginia Supreme Court noted:

> Construing a similar policy provision, we held in *State Farm v. Porter*, 221 Va. 592, 272 S.E.2d 196 (1980), that the giving of notice of accident is a condition precedent to coverage under the contract and requires "substantial compliance by the insured."

*Id.* at 323, 288 S.E.2d at 473.

In Virginia, the insured's compliance with the notice provisions of the policy is a condition precedent to the insured's right to recover from the insurer, even where the policy does not contain the words "condition precedent." *See, e.g., Liberty Mut.*, 223 Va. at 323, 288 S.E.2d at 473; *Temple v. Virginia Auto. Mut. Ins. Co.*, 181 Va. 561, 25 S.E.2d 268 (1943) ("Performance of these [notice] provisions is usually regarded as a condition precedent to the right to recover on the policy."); *Virginia Farm Bureau Mut. Ins. Co. v. Sutherland*, 2004 WL 2360162, *1 (W.D. Va. 2004) ("Virginia courts construe a notice provision as a condition precedent to liability"); *Lyon v. Paul Revere Life Ins.*

40

*Co.*, 289 F. Supp. 2d 740, 743 (W.D. Va. 2002) ("such provisions constitute conditions precedent to coverage under the insurance policy").

The case of *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 423 S.E.2d 188 (1992), is instructive. In that case, four teenagers negligently set a fire that destroyed a house. The insured did not notify his insurance company of the accident, but over three years after the fire, two years after the letter from the homeowner's counsel, and within days of service of the suit, a copy of the Motion for Judgment was sent to State Farm. State Farm also insured the parents of one of the other teenagers, whose father had given notice of the incident to State Farm after receiving the letter from counsel for the homeowners. Even though notice of the suit was timely given within ten days after service of the suit and State Farm already had notice of the incident from another insured, the Virginia Supreme Court held that "a delay of over two years in complying with the provisions of the policy's listed duties after loss is, as a matter of law, such a substantial and material violation of State Farm's notice requirement that it need not show that it was prejudiced by the delayed notice." *Id.* at 505.

Similarly, in *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181 (E.D. Va. 1995), the "occurrence," a sexual assault, happened in June 1991. The insured was sued on May 6, 1994, and forwarded the Motion for Judgment to her insurer three days later, on May 9, 1994. Although the suit papers were forwarded promptly, the Eastern District of Virginia held that the insureds "substantially and materially breached the policy by failing to provide notice promptly and adequately" after the incident. *Id.* at 1188. *See also Virginia Farm Bureau Mut. Ins. Co. v. Sutherland*, 2004 WL 2360162 (W.D. Va. 2004), the accident happened on November 11, 2000 (Although notice of the claim was given promptly, the Western District of Virginia held that a delay of 601 days in notice after the accident was a "substantial and material breach" of the policy's notice provision.); and *Atlas Ins. Co. v. Chapman*, 888 F. Supp. 742 (E.D. Va. 1995) (126-day delay in giving notice was a "substantial and material" breach of the notice provision).

## C. *The Return of the Tractor was a Non-Business Pursuit*

The second exclusion listed in the Personal Liability section of the HomeProtector Ultracover policy (hereinafter referred to as the "business pursuits exclusion") states the following:

> We do not cover under Bodily Injury Liability Coverage, Property Damage Liability Coverage, Personal Injury Liability Coverage and Medical Payments to Others Coverage:

>    2. Bodily injury, property damage, or personal injury *arising out of* business pursuits of anyone we protect.

Ex. A at 14 (emphasis added).

"The burden is upon the insurer to prove that an exclusion applies." *Transcontinental Ins. Co. v. R.B.M.W., Inc.*, 262 Va. 502, 512, 551 S.E.2d 313, 318 (2001). "Reasonable policy exclusions not in conflict with statute will be enforced; [yet] to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993); *citing State Farm Mut. Auto. Ins. Co. v. Gandy*, 238 Va. 257, 261, 383 S.E.2d 717, 719 (1989). At the time of the accident the tractor was "coming" from a personal errand not a business pursuit. *Compare Asplundh Tree Expert Co. v. Pacific Employers Ins. Co.*, 269 Va. 399 (2005) ("going and coming" to work site rule applied to accident in Workers' Compensation case).

While there is no Virginia case construing the terms of this policy exclusion in the context of the insured status of a farm type vehicle under a homeowner's insurance policy, "arising out of" is a term of art in workers' compensation law, which has been frequently discussed by the Virginia Supreme Court: "[w]e have many times quoted with approval the definition of "arising out of" found in *In re McNicol* . . . which states that an injury `arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, *a causal connection* between the conditions under which the work is required to be performed and the resulting injury'." *Lucas v. Lucas*, 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972), *quoting In re McNicol*, 102 N.E. 697 (1913). *Black's Law Dictionary* defines "arising from" as "arise," vb. . . . (2) To result (from), <litigation routinely arises from such accidents>." *Black's Law Dictionary*, 102 (rev. 7th ed., 1999).

In *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158-59 (1993), the Virginia Supreme Court reversed the holding of the trial court which had applied the "business pursuits" exclusion of a homeowner's policy and denied coverage:

>    Here, the paragraph at issue consists of two parts. There is a blanket exclusion of coverage with respect to the Coffeys' "business pursuits" ("[t]his policy does not apply . . . to bodily injury . . . arising out of business pursuits of any Insured"), and an exception to that blanket exclusion ("except activities therein which are ordinarily incident to non-business pursuits"). Clearly, the exception reduces the breadth of the immediately preceding clause.

Construing both parts together, and giving each component its plain meaning, we hold they reasonably can be read to state the following proposition that the parties obviously intended: No liability coverage will be afforded with respect to an insured's "business pursuits," but, as an exception to this broad rule, *coverage will be extended to liability that arises out of an act or omission that ordinarily is not associated with the insured's business enterprise, even though the act ·or omission is connected in some manner with the insured's "business pursuits."*

*To determine the applicability of the exception, the appropriate inquiry is not whether the insured was engaged in a business pursuit at the time of the accident, but whether the particular activity was nevertheless, in the language of the exception, one ordinarily incident to nonbusiness pursuits.*

In this case, the specific activity that caused the infant's injuries was mowing the insureds' lawn. That activity is not ordinarily associated with child-care functions and, when viewed against the background of the entire exclusion, clearly is an activity that ordinarily was incident to nonbusiness pursuits. This is the only interpretation of the disputed provision that gives effect to the exception.

If we were to say, taking a broad view of the exclusion as advocated by the insurer, that the infant was injured because of lack of proper supervision, and that such supervision is directly related to the business pursuit of professional child care, we would render the exception meaningless; there must be some act or omission that is covered by the exception, even though it somehow may be connected with a "business pursuit."

(Emphasis added; cites omitted.)

The policy language in this case is almost identical to that at issue in *Floyd*, and the facts provide instruction. Although the John Deere farm tractor involved in the accident had a business purpose as its primary use, at the time of the accident it was not being used incident to the insured's farming business. Applying the principles expressed in *Floyd*, the transportation of the tractor from Mr. Jenkins property was a non-business pursuit. Even if Mr. Wines were to intend the unloading of *his own hay*, or the bush-hogging of *his own fields* at some hypothetical point after the tractor was delivered to the Louwill Lane farm, that would nonetheless merely be "connected in some manner with the insured's

business pursuits." The alleged injury did not arise out of Mr. Wines' cattle farming operation on the Louwill Lane farm. In today's large tract residential developments, there are plenty of homeowners, who are not farmers, who have small farm tractors. If they loan that tractor to a farmer, it does not mean that they are engaged in farming. Conversely, when a farm tractor is loaned to a neighbor as a favor, until it is returned to the owner Wines, it is not being used in his "business pursuit," rather it was being used on a personal errand.

In this case, the use of the tractor at the time of the accident determines whether it was covered under Erie's policy. When the accident occurred, Matthews was acting as a gratuitous agent of his uncle, the insured, because, as a favor, he was returning the tractor from a favor mission, so it was not being used incident to a business pursuit of the insured. Therefore, had the insured complied with the notice provisions of the policy, the accident would have been covered.

## D. *The Tractor is a Covered Vehicle*

The John Deere farming tractor was not subject to motor vehicle registration and was a "farm type vehicle" covered under the Erie Policy, which explicitly excludes injuries resulting from the use of motor vehicles (hereinafter referred to as the "motor vehicle exclusion"). However, several exceptions to the "motor vehicle exclusion" are listed, among which include, "We do cover [liability resulting from the use of] motor vehicles if . . . (5) they are a lawn or *farm type vehicle* or snowblower, wherever used or located, if *not subject to motor vehicle registration*." Ex. A at 15.

Virginia Code § 46.2-665 states that "any motor vehicle, trailer, or semitrailer used exclusively for agricultural or horticultural purposes" is exempt from registration, unless they drive over highways . . . subject to a number of inapplicable exceptions. Erie argues that since Cody had driven the tractor over Bentonville-Brownton Road (falling under the statutory definition of "highway"), it is not covered under the policy. However, despite the plaintiff's argument, *§ 46.2-665 is not the exclusive statute applicable to farm tractors*. A full reading of *§ 46.2-665 shows that it is generally referring to any motor vehicle such as "farm trailers and semitrailers," and presumably includes farm tractors*. However, a completely different statute specifically governs farming tractors, Virginia Code § 46.2-667, which states:

> *Farm machinery and tractors. No person shall be required to obtain the registration certificate*, license plates and decals, or pay the prescribed fee *for any farm machinery or tractor when operated on a highway (i) between one tract of land and another*

*regardless of whether the land is owned by the same person* or (ii) to and from a repair shop for repairs.

Va. Code Ann. § 46.2-667 (2004) (emphasis added).

The tractor only traveled over Bentonville-Browntown Road when traveling between tracts of land. The statute is clear; traversing Bentonville-Browntown Road solely to travel between tracts of land does not require that the tractor be registered. Consequently, the tractor was not in need of registration under the Code of Virginia, and thus was a "farm type vehicle" covered under the Policy.

## E. *Insured Individual*

Cody Ryan Matthews is potentially an insured individual under the Policy, because he was driving a vehicle covered under the policy with the insured's permission, when he was neither being compensated nor while acting in the course of any business activity of the insured. The pertinent portion of the Policy's definition of "anyone we protect" is the following:

> Under *Home and Family Liability Protection*, anyone we protect also means. . . .
> 4. *any person with respect to any vehicle covered by this policy*. Any person using or having custody of this vehicle in the course of any business use, or without permission of the owner is not anyone we protect.

Ex. A at 4 (emphasis added).

In contrast with the "business pursuits exemption" which utilizes the expression "arising out of," this section contains the limiting expression, "in the course of any business use." "The expressions "arising out of" and 'in the course of' are not synonymous." *Baggett Transp. Co. v. Dillon*, 219 Va. 633, 637, 248 S.E.2d 818, 822 (1978). "The words 'arising out of' refer to the origin or cause of the injury while the phrase 'in the course of' pertains to the time, place, and circumstances under which the accident occurred." *Id.*

The accident on the Bentonville-Brownton Road was neither "in the course of" Mr. Wines' cattle raising business, nor Mr. Wines' neighborly pursuits in allowing Mr. Jenkins the use of the tractor. The accident was "in the course of" Cody's transporting the tractor on the Bentonville-Browntown Road as a favor to his uncle, Mr. Wines. Critical to the resolution under this provision is that it is Cody's not Mr. Wines' "business pursuits that are at

issue in this section;" it is the *business endeavors of the person driving the covered vehicle* which are at issue.

### III. Decision

For the foregoing reasons, it is adjudged and ordered that:

1. The insured failed to give timely notice under the policy of insurance so there is no coverage for the accident;

2. Had timely notice of the accident been given, the accident would have been covered under the Erie policy;

3. Erie has no duty to defend or indemnify Carlton L. Wines and Cody Ryan Matthews in connection with the claims made in the underlying case, Theodore J. Young, Administrator/Personal Representative of the Estate of Ted Alan Young v. Cody Ryan Matthews and Carlton Wines, L04-000016.

The Clerk is directed to send a copy of this order to counsel of record, who shall file such objections hereto as deemed advisable within ten days of their receipt of a copy of this order. Endorsement is dispensed with pursuant to Supreme Court Rule 1:13. This is a final order, and the Clerk is directed to place this file in with the ended causes.