## State Farm Fire and Casualty Co.

### v.

## Wade Walton, et al.

Record No. 920145

November 6, 1992

Present: All the Justices

*Theodore I. Brenner (Scott W. Lechner; Bremner, Baber & Janus*, on briefs), for appellant.

*Joseph W. Milam, Jr. (Anthony H. Monioudis; Woods, Rogers & Hazlegrove*, on brief), for appellees William E. Bumpass and Imogene O. Bumpass.

No brief or argument on behalf of appellees Wade Walton, Roy Hammock, Jr. and Margaret Hammock.

JUSTICE WHITING delivered the opinion of the Court.

The primary issue in this case is whether the language in a homeowner's liability insurance policy requires an additional insured to give the insurance company notice of an "accident or occurrence."

On November 28, 1985, about 6:30 p.m., four teenagers, Angela White, Wade Walton, Mike Trevillian, and Ronnie Alan Cox, entered a partially completed house in Pittsylvania County owned by William E. Bumpass and Imogene E. Bumpass. After the teenagers left, a fire destroyed the house and its contents.

Some time later, the Cincinnati Insurance Company (Cincinnati), the property damage insurance carrier for the Bumpasses, made a claim against Ronnie Cox for the loss. Ronnie's mother, Linda D. Davidson, referred the matter to her homeowner's liability insurance carrier, State Farm Fire and Casualty Company (State Farm). In a letter dated August 1, 1986, L. Wayne Dalton, an insurance adjuster for State Farm, advised Cincinnati that Ronnie was not an additional insured under his mother's policy because he did not meet the policy requirement of living in her household at the time of the fire. However, Dalton advised Cincinnati that his investigation indicated Wade, Angela, and Mike were present at the Bumpass house with Ronnie on the night of the fire.

The following month, Frank O. Meade, of the law firm of Meade, Tate and Daniel, wrote Roy Hammock, Jr., Wade's stepfather, advising Hammock of Cincinnati's fire coverage and Meade's representation of Cincinnati. Meade also stated:

I am advised that your child, Wade Walton, on or about November 28, 1985, may have been involved in a reported negligent setting of a fire on the premises, causing substantial damage to the dwelling.

You probably have a homeowners' insurance policy on your home. If so, you will have liability affording protection for your child, as to a claim which will be filed against him for damages resulting from the fire.

The purpose of this letter is to suggest that you immediately report this matter to your homeowners' insurance company, if you have not already done so, so that you can protect your child financially. Please ask the company to contact me.

Meade wrote a similar letter to Richard White, Angela's father, on the same day he wrote Mr. Hammock. Angela's parents and Wade's stepfather and mother had State Farm homeowner's policies, with liability provisions similar to those of Mrs. Davidson's policy. However, because Angela and Wade were living in the homes of the insureds, the State Farm policies covered them as additional insureds. Although the Hammocks did not "report the matter" to State Farm after receiving Meade's letter, Angela's father did.

On November 16, 1987, the Bumpasses sued Wade, Angela, and Mike to recover damages for their fire losses. Because Wade had enlisted in the United States Navy on September 8, 1987, he was apparently absent from the Pittsylvania County area for some time and was not served with process until November 29, 1988. On December 9, 1988, over three years after the fire, and over two years after Wade's stepfather received Meade's letter, the stepfather reported the claim and transmitted Wade's copy of the motion for judgment to State Farm.

Upon being advised that the Hammocks had a State Farm homeowner's liability policy that included Wade as an additional insured thereunder, State Farm conducted a third investigation. On December 15, 1988, Dalton recorded an interview with Mrs. Hammock, who repeated what Wade had told her and the investigating fire chief about the incident.

On May 1, 1989, State Farm filed this suit for declaratory judgment against Wade, the Hammocks, and the Bumpasses to determine whether the delayed notice breached a policy condition that relieved it of its duty to provide coverage to Wade. In its motion for summary judgment, State Farm contended that the delayed notice was such a policy breach; in cross-motions for summary judgment, the defendants contended that it was not.

The parties filed a joint stipulation of the facts, with exhibits attached. Two of the exhibits were transcripts of Dalton's recorded interviews with Angela and Mrs. Hammock, Wade's mother. The only evidence of what Angela and Wade knew about the fire, about the subsequent investigations, and about the notices from Meade came from these interview statements. The parties also stipulated that the statements in the interviews were deemed to be true for the purposes of the motions for summary judgment.

We will summarize pertinent parts of those statements. Angela said that Wade and Ronnie had built a fire in a bathtub that was

stored in the living room on the first floor. Wade told his mother that someone had placed a piece of sheet metal over the bathtub after the fire went out, and that the four teenagers had hurriedly left the house shortly thereafter, when they heard a car approaching. The sheriff and the fire chief questioned Wade in his mother's presence a short time after the fire. Wade's mother said that when the fire chief told Wade that the fire had started in the upstairs part of the house and in the basement, Wade denied that he had been in either of these locations.

Angela said that Wade admitted that he had received a copy of Meade's letter. The only explanation in the record for the Hammocks' failure to notify State Farm after they knew of Cincinnati's claim is contained in the following pertinent portion of Mrs. Hammock's recorded statement:

> [A]bout a week after the questioning [by the sheriff and fire chief] this lawyer, Meade and Tate I believe, is that right, called me and told me that my child was responsible for this and I was going to be held responsible and that I should get in touch with my homeowner's insurance. Well I told him that my child had not been convicted of anything that you know why should I do that and he kind of got smart and hung up.

Without giving a reason, the chancellor denied State Farm's motion for summary judgment and sustained the defendants' cross-motions for summary judgment.* State Farm appeals.

■ Well-settled rules govern our decision. An insurance policy is a contract; therefore, we give the words used in this policy their ordinary and usual meaning when they are susceptible of such construction. *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990). If the policy language is unambiguous, we do not resort to rules of construction. *Virginia Farm Bureau Mut. Ins. Co. v. Hodges*, 238 Va. 692, 696, 385 S.E.2d 612, 614 (1989). We simply apply the terms of the policy as written. *United Services Auto. Ass'n v. Webb*, 235 Va. 655, 657, 369 S.E.2d 196, 198 (1988).

---

* State Farm settled the claim against Angela while this suit was pending, and the court dismissed the action by order of nonsuit dated July 16, 1990. However, the Bumpasses filed another action at law against Wade, Mike, and Ronnie on July 20, 1990, and State Farm received timely notice thereof. The settlement, nonsuit, and subsequent action have not affected the issues in this appeal.

With these rules in mind, we examine the policy provisions in question as contained in Section II—Conditions.

> **Duties after loss**. In case of an accident or occurrence, the insured [who, the parties agree, is Wade under definitions elsewhere in the policy] shall perform the following duties that apply. You [defined elsewhere in the policy as the named insureds, the Hammocks] shall cooperate with us in seeing that these duties are performed:
>
> a. give written notice to us or our agent as soon as practicable, which sets forth:
>
> (1) the identity of this policy and insured;
> (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and
> (3) names and addresses of any claimants and available witnesses;
>
> b. forward to us every notice, demand, summons or other process relating to the accident or occurrence.

State Farm claims that the first and second sentences of the above provisions required Wade, as an additional insured, or the Hammocks, acting for Wade, to notify State Farm of its potential insurance liability as soon as practicable after Wade was interviewed by the sheriff and fire chief, preferably sometime shortly after the fire, but, at the latest, certainly after Wade and the Hammocks received Meade's letter. However, the defendants read the second sentence as limiting the performance of the listed duties to the Hammocks, thus relieving Wade, a mere additional insured, of any such responsibility.

Because we apply these unambiguous provisions of the policy as written, we disagree with the defendants. The first sentence of the provision for "[d]uties after loss" clearly requires Wade, as an additional insured, to perform the listed duties that are applicable. One such duty is that of giving written notice to State Farm of the identity of the Hammocks' policy and of Wade's status as an additional insured. The second sentence does not cast that duty entirely upon the Hammocks; it merely requires them to "cooperate" in seeing that Wade's duty is "performed." Thus, had Wade lacked

the maturity and judgment to appreciate the duty of timely notice that was imposed upon him by the policy, or had he been otherwise unable or unavailable to give such notice, the second sentence would have required the Hammocks to see that Wade's duty of timely notice was performed by giving notice on his behalf.

And, contrary to the defendants' contention, we conclude that this duty to give notice ''as soon as practicable'' after an ''occurrence'' arose long before Wade was served with process in the Bumpasses' first action against him. An ''occurrence'' which gives rise to a duty of notice to an insurance company means an ''incident which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy.'' Black's Law Dictionary 1080 (6th ed. 1990).

Although there might be some dispute as to whether the duty of notice arose after the sheriff and fire chief interviewed Wade in his mother's presence, there can be little doubt that such a duty arose upon Mr. Hammock's receipt of Meade's letter, which Wade admitted receiving. The record of Mrs. Hammock's interview shows that Wade, an honor student in high school, was 16 years old at the time of the fire and that he was 17 years old when he received Meade's letter. Thus, the record establishes, as a matter of law, that Wade was a person of at least ordinary intelligence and prudence who knew that the Bumpasses planned to make a claim against him. Accordingly, either he, or the Hammocks on his behalf, were required to give a notice of his coverage ''as soon as practicable'' after receipt of Meade's letter.

Such a requirement of timely notice of an accident or occurrence is a condition precedent to an insurance company's liability coverage requiring ''substantial compliance by the insured.'' *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of America*, 223 Va. 317, 323, 288 S.E.2d 469, 473 (1982) (quoting *State Farm Mut. Auto. Ins. Co. v. Porter*, 221 Va. 592, 599, 272 S.E.2d 196, 200 (1980)). Nor does it matter that State Farm has conceded it was not prejudiced by the delayed notice. If a violation of the notice requirement is substantial and material, the insurance company need not show that it was prejudiced by such a violation. *State Farm Fire & Cas. Co. v. Scott*, 236 Va. 116, 120, 372 S.E.2d 383, 385 (1988).

Although absence of prejudice may have a bearing on the issue of the materiality of the information that an insured should have given, *id.* at 120-21, 372 S.E.2d at 385, when no notice is

given, lack of prejudice is not an issue, and the failure to give the required notice becomes a matter of law. *Porter*, 221 Va. at 599, 272 S.E.2d at 200. Under the circumstances of this case, we hold that a delay of over two years in complying with the provisions of the policy's listed duties after loss is, as a matter of law, such a substantial and material violation of State Farm's notice requirement that it need not show that it was prejudiced by the delayed notice.

Because Wade and the Hammocks violated the notice requirement, Wade is not entitled to coverage under State Farm's policy and the chancellor erred in denying summary judgment to State Farm and in granting the defendants' cross-motions for summary judgment. Therefore, we will reverse the decree of the chancellor and enter judgment for State Farm.

*Reversed and final judgment.*