## CIRCUIT COURT OF THE CITY OF NORFOLK

Richard Lee Revell, Jr.

v.

USAA Casualty Ins. Co. et al.

May 8, 1997

Case No. (Chancery) C-95-63

BY JUDGE EVERETT A. MARTIN, JR.

By a second amended bill of complaint, Richard Lee Revell, Jr., seeks a declaratory judgment that a policy of automobile casualty insurance USAA Casualty Insurance Company ("USAA") issued provides coverage for claims made against him arising out of an automobile accident that allegedly occurred on August 3, 1992, that USAA acted in bad faith in denying coverage and that he is entitled to recover his costs, attorney's fees, and other damages pursuant to Code of Virginia, § 38.2-209. In addition to USAA, the plaintiff named Antoinetta Harris, Edward A. Harris, and Verneita Reid (the "personal injury plaintiffs"), and Cigna Property and Insurance Company as defendants. Copies of pleadings, motions, and subpoenas were sent to counsel for the personal injury plaintiffs. The personal injury plaintiffs were served with witness subpoenas, but they were never served with process, nor did their counsel sign any decree that has been filed in the suit. Cigna is the uninsured motorist carrier for the vehicle (the "truck") the personal injury plaintiffs occupied at the time of the alleged accident. By the agreement of counsel, the Insurance Company of North America is substituted as a defendant for Cigna.

It is undisputed that on August 3, 1992, the USAA policy was in effect on the car the plaintiff was driving and that he was sixteen years old and residing with his parents. His father owned the car; his mother was the named insured under the policy. The personal injury plaintiffs were riding in a truck that was stopped at the intersection of Llewellyn Avenue and 21st Street in Norfolk,

and they allege the plaintiff's car collided with the truck causing them personal injuries. The plaintiff denies there was a collision.

On January 11, 1993, Lucille Elko, a claims adjuster for Cigna, informed the plaintiff's mother that a claim had been made that their car had been involved in the alleged accident. Ms. Elko also testified she spoke the same day to an unnamed representative of USAA and that she gave that representative the particulars of the personal injury plaintiffs' claims. USAA has no record of having received such a telephone call from Ms. Elko.

Sometime in May of 1993, a photographer came to the Revells' residence to take photographs of the car. On April 7, 1994, the plaintiff's father received a deposition subpoena to testify in one of the actions brought by the personal injury plaintiffs. The next day Mr. Revell delivered a copy of the subpoena to USAA. The delivery of the subpoena was the first notice of the alleged accident the Revells gave to USAA.

## Coverage

Condition 3 of the policy applies to the liability coverage, and it provides:

> *Notice*: In the event of an accident, occurrence, or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

USAA has agreed that except for the issue of its timeliness, Ms. Elko's telephone call to it on January 11, 1993, would be sufficient to comply with the condition of the policy if she provided the information she claims. Edward Cochran, USAA's representative at trial, so testified on cross-examination. Counsel for USAA did not object, nor did he argue that notice from Ms. Elko would not satisfy the condition.

The term "insured" is defined in the policy as "a person or organization described under 'Persons Insured'." There is no dispute the car was an "owned automobile" under the liability coverage of the policy, and with respect to an "owned automobile," the "Persons Insured" include "the named insured and any resident of the same household." Thus Mrs. Revell and the plaintiff are included within the definition of "insured" for purposes of notice.

An "occurrence" as used in connection with a duty to notify an insurer has recently been defined by the Supreme Court of Virginia as an "incident which

was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by the policy." *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 504, 423 S.E.2d 188, 192 (1992). That case also establishes that even if no duty to notify the insurer arises at the time of the event causing the loss, it may arise when the insured learns of the claim from a third party. Counsel for USAA did not contend that the notice requirement would be applied differently in the event of an "accident" or "loss," and thus I will not consider it.

USAA agrees it has the burden of proof to establish the notice condition of the policy was violated. The plaintiff testified he stopped his car behind the truck without hitting it, and when he realized the truck was inoperable, he passed to its right. After completing his pass, he went to a restaurant, and while there, he inspected the car and saw no damage. He admitted that his car did come very close to the truck while passing it. Mrs. Revell testified she saw no damage when she inspected the car during Ms. Elko's call. A photograph of the car introduced as plaintiff's Exhibit 1 shows no damage whatsoever.

Two of the personal injury plaintiffs testified by deposition. Each testified the plaintiff's car struck their truck twice, that the first collision was forceful, and that the plaintiff then backed up and hit them a second time while attempting to pass. I believe it was Ms. Reid who testified that the plaintiff drove up behind their truck and hit it the first time before stopping. Mr. Harris described the second collision as more of a scrape.

William Harrell, a former salesman for Charlie Falk Auto, testified that he was showing the truck to Ms. Harris at the time of the accident. He said the truck did not break down but that it was stopped at a red light when it was hit. He described the impact as a "pretty severe jolt" that knocked the occupants off balance and caused a small dent to the right rear of the truck. Mr. Harrell has not filed any claim for personal injury arising out of this incident, and thus his testimony would ordinarily be very credible. However, without objection, the court heard testimony from Mr. Cochran that the Norfolk Police Department officer who responded to the accident estimated the damage to the truck at $5.00.

I find there was a collision but that USAA has not proved by a preponderance of the evidence that there was an "occurrence" on August 3, 1992, because the collision was so minor no person of ordinary intelligence would believe it would give rise to a claim for damages. See *Stonewall Ins. Co. v. Hamilton*, 727 F. Supp. 271 (W.D. Va. 1979).

Ms. Elko testified by deposition, which was admitted as defendant's Exhibit 1, that she told Mrs. Revell on January 11, 1993, that a claim had been made against the Revells' car, and she gave her the date of the accident and the

license plate of the car. She said Mrs. Revell verified that the license plate was indeed that of her car. (Depo., p. 12.) Ms. Elko also prepared a computer record of her call to Mrs. Revell, a copy of which was admitted as defendant's Exhibit 4. (Depo., p. 17.) Mrs. Revell testified she did not understand the nature of the call, that she thought the caller was a representative of Signet Bank, and that she was distracted at the time by the plaintiff's medical problems. I find that Ms. Elko's call to Mrs. Revell on January 11, 1993, provided Mrs. Revell with sufficient information that there had been an "occurrence." Mrs. Revell is of at least ordinary intelligence, and her concern about her son's medical condition is immaterial. Thus the Revells' duty to notify USAA arose on January 11, 1993.

Ms. Elko also testified that she called USAA after she completed her telephone call with Mrs. Revell and that she gave USAA the date and location of the accident, the drivers involved, the owner of the car, and the vehicle number. (Depo., pp. 20-22, 26-27, 45, and 50.) Ms. Elko also prepared a computer record of her conversation with the USAA agent, which was admitted as defendant's Exhibit 5, and some handwritten notes of her conversation with Mrs. Revell, which was admitted as defendant's Exhibit 6. The latter exhibit includes the abbreviation "USAA" and the telephone number of USAA.

Counsel for USAA argued that Ms. Elko did not call his client and that, even if she did, the information she provided was not sufficient to put USAA on notice of the claim. He relies on defendant's Exhibit 5, which did not recite that Ms. Elko gave USAA the necessary claim information, and Mrs. Elko's testimony that she did not know the name of the person at USAA to whom she spoke. He argued that the court ought not to believe Ms. Elko gave the necessary information to USAA because it is in the obvious interest of Cigna that she so testify. It is true it is in Cigna's interest for her to so testify, but for the same reason, it would also have been in Cigna's interest for her to have given the claim information to USAA on January 11, 1993. An experienced claims adjuster like Ms. Elko would deduce from the conversation with Mrs. Revell that the Revells had not given notice to USAA. Ms. Elko was firm in her testimony that she gave USAA the necessary information, and I so find. Thus, under the posture of this case, USAA received notice of the "occurrence" on the same date the Revells learned of the "occurrence." The condition of the policy has been satisfied.

*Bad Faith*

The insured has the burden of proving the insurer's bad faith by clear and convincing evidence. *State Farm Mut. Auto. Ins. Co. v. Floyd*, 235 Va. 136, 366 S.E.2d 93 (1988). Bad faith under Code of Virginia § 38.2-209 is to be judged under a reasonableness standard. There is no bad faith when the issue of coverage is reasonably debatable. *Scottsdale Ins. Co. v. Glick*, 240 Va. 283, 397 S.E.2d 105 (1990); *Cuna Mutual Ins. Society v. Norman*, 237 Va. 33, 375 S.E.2d 724 (1989). Although I have concluded there was no "occurrence" on August 3, 1992, it is an issue on which reasonable men could differ. Thus the plaintiff has not proved USAA's bad faith by clear and convincing evidence.