## CIRCUIT COURT OF FAIRFAX COUNTY

Debra Munchenbach et al.

v.

Nationwide Mutual
Fire Insurance Co. et al.

February 13, 2007

Case No. CL-2005-6226

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter comes on a petition for declaratory judgment filed by Debra Munchenbach ("Debra"), as mother and next friend of Alex Munchenbach ("Alex"); Debra, individually; and Matthew Munchenbach ("Matthew") (collectively "the Munchenbachs") The Motion for Declaratory Judgment was originally filed by Debra, as mother and next friend of Alex, against Nationwide and the Salehis. By a Consent Order dated September 29, 2006, the parties agreed to add Debra and Matthew as additional plaintiffs. However, the Consent Order mistakenly added Debra and Alex, rather than Debra and Matthew. Counsel for the parties represented to me in a telephone conversation that another Consent Order would be submitted, one in which Matthew was also added as an additional plaintiff. At this time, that Consent Order has not been received. This letter is written under the assumption that the Consent Order adding Matthew will received by the Court shortly.

Matthew is the husband of Debra and the father of Alex. Their action is brought against Nationwide Mutual Fire Insurance Company ("Nationwide"), Michael Salehi ("Mr. Salehi"), and Saum Salehi ("Saum"). The petition seeks to determine whether the Munchenbachs have coverage under a Nationwide policy solely issued to Debra's grandmother, Laura Hunt, in connection with a separate suit filed against them by the Salehis.

On February 2, 2003, the Munchenbachs resided at 907 Sterling Court, Herndon, Virginia. That residence was owned by Ms. Hunt. Ms. Hunt had a homeowner's insurance policy with Nationwide (the "Policy"). On February 2, 2003, Alex shot a BB gun within the premises, injuring Saum, a neighborhood friend. Alex was twelve years old on the date of the incident; Saum was a minor as well. Debra was home at the time and immediately became aware of the incident. Saum's mother came to the house shortly after and began calling her health insurance provider. Debra suggested that Saum needed to go to the hospital and offered to call 911. Saum's mother immediately took him for medical treatment. Matthew was made aware of the incident and the medical treatment within minutes by Debra. The parties stipulate that the Munchenbachs knew on February 2 that Saum was receiving medical attention and incurring medical expenses and knew he had surgery within days of the incident. At the time of the incident on February 2, 2003, Ms. Hunt was 94 years old and in frail health. Debra testified at trial that Ms. Hunt never learned of the incident prior to her death.

My trial notes indicate that Laura Hunt died in April of 2004. This is obviously incorrect considering Exhibits B, C, and E show that an Executrix was handling Ms. Hunt's estate by October of 2003. Perhaps Ms. Hunt's death actually occurred in April of 2003; regardless, it is clear that she had passed away by October of 2003.

The day after the incident, Debra and Matthew spoke to Mr. Salehi. Debra told Mr. Salehi that "we have insurance." I construe this to mean that Debra believed they had liability, as opposed to health, insurance. Mr. Salehi advised them of the condition of his son and said that he did not wish to sue as a result of the incident. Rather, he wanted the Munchenbachs to cover his son's out-of-pocket medical expenses. Matthew, anticipating this meant those expenses not covered by Saum's health insurance, agreed to do so.

Section II, page J1, Paragraph # 3e, of the Policy provides that "the insured shall not, except at the insured's own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the bodily injury." Neither counsel argued the ramifications of the Munchenbachs' offer to reimburse the Salehis' out-of-pocket medical expenses and whether that offer breached the terms of the

Policy. I have considered the issue, and I find that, even if Matthew's statements to Mr. Salehi were "assuming an obligation" as defined in the Policy, Matthew's offer was done at his own cost only and, thus, it does not materially breach of the terms of the Policy.

In the spring of 2003, Mr. Salehi called the Munchenbachs' home and asked to speak with Matthew. Debra advised that Matthew was in the hospital and unavailable to talk with him and asked Mr. Salehi if he wished to talk to her. Mr. Salehi advised he would call back. In July of 2003, Matthew and Mr. Salehi met and discussed Saum's condition. Mr. Salehi advised that "people around him" were suggesting that he sue, but that he did not wish to sue and was looking only for reimbursement for his out-of-pocket expenses. Matthew told him to "let us know when you have a number." In August of 2003, Mr. Salehi tried unsuccessfully to contact Matthew a few times.

During the first week of October 2003, the Munchenbachs received a demand letter from the Salehis' attorney. The letter was dated September 23, 2003, but likely not received by the Munchenbachs until early October because they had moved from the Sterling Court address. On October 7, 2003, after receiving the demand letter, Debra telephoned Nationwide on behalf of her family to alert them of the incident. That was the first notice to Nationwide. A Nationwide claims adjuster contacted her the next day, and statements were taken from Alex and Matthew by Nationwide on October 22, 2003. Neither Alex nor Matthew has ever called Nationwide to report the incident. In addition, Debra wrote her aunt, Janice Guiliano, who is Ms. Hunt's daughter and the Executrix of her Estate, on October 9, 2003, to inform her of the incident. Ms. Guiliano was informed by a letter from Nationwide on October 20, 2003, that Nationwide was "continuing to investigate this claim." On November 5, 2003, Nationwide wrote Ms. Guiliano to deny coverage to the Munchenbachs for the incident.

At the time of the incident, Debra was a claims processor for Allstate Insurance Company. In that capacity, she assisted claims representatives in processing claims, gathering data, and communicating with attorneys. She also was familiar with the claims process from having submitted four automobile insurance claims on behalf of her family over the years (to a different insurer). At least two of those claims were reported within a day of the occurrence precipitating the call. Debra was aware of the existence of the Policy on February 2, 2003. No impairment or disability prevented Matthew or her from making a claim under the Policy to Nationwide between February 2 and early October 2003. Debra contends that she did not notify Nationwide until after receiving the demand letter because Mr. Salehi claimed he only wanted his out-of-pocket expenses covered and since she believed that her family could

handle that, there was no need to alert Nationwide. Matthew testified he had no knowledge of the Policy until the time Debra filed a claim. He never asked about the existence of a policy, both because he did not own the home and because his wife usually handled such matters due to her employment in the insurance field. There was no evidence that Alex was aware of the existence of the Policy.

Following the October 7 notice to Nationwide, its claims adjuster, Gary Thieme, testified that he arranged to talk to Alex and Matthew and recorded those interviews. He said that he was unable to contact Saum and his family directly at that time because they were represented by counsel. However, he did talk to their counsel to determine the status of Saum's health. Mr. Thieme testified that, had a claim been made immediately following the incident, he would have sought to meet with Saum and his family, heard from them about how the incident had happened, and gotten medical information and documents to evaluate the claim. Mr. Thieme acknowledged that a victim is under no obligation to talk to him and that he could not be sure he could have settled the claim short of litigation. He also indicated that the Salehis' counsel has not refused to cooperate with Nationwide in its investigation of the matter.

Nationwide argues that a loss occurred when Alex injured Saum on February 2, 2003. Nationwide further contends that the Munchenbachs had a duty under the Policy to notify Nationwide of the loss as soon as practicable after it occurred, that they failed to do so, and that such failure results in a denial of coverage for them under the Policy. The Munchenbachs argue that they were not required to give notice to Nationwide until a loss occurred, which they contend happened when they were advised by the Salehis' attorney that a suit was to be filed against them. The Munchenbachs assert that, once they realized a claim would be filed against them by the Salehis, they promptly gave notice to Nationwide and that Nationwide has suffered no prejudice from the reasonable delay in reporting the incident.

I find the Munchenbachs' argument that no loss occurred until they were advised that a suit would be filed against them unpersuasive. "Loss" is defined as "the amount of an insured's financial detriment due to the occurrence of a stipulated contingent event (as death, injury, destruction, or damage) in such a manner as to charge the insurer with a liability under the terms of the policy." *Webster's Third New International Dictionary (Unabridged)* (2002). *Black's Law Dictionary* (7th ed.) defines loss as "the amount of financial detriment caused by an insured person's death or an insured property's damage, for which the insurer becomes liable." Loss has also been held synonymous with "damage," deprivation," and "injury." I find

that a loss occurred when Alex shot Saum in February 2003, rather than when the Münchenbachs became aware that the Salehis were filing suit against them in October 2003.

Since I find that a loss occurred on February 2, 2003, we must now turn to the section of the Policy governing such a loss. Section II, Liability Conditions, page J1, Paragraph # 3, of the Policy governs the requirement of notice at issue here. In pertinent part, it provides:

> 3. **Duties after Loss.** In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.
>     (a) give notice to **us** or **our** agent as soon as practicable setting forth:
>         (1) identity of the policy and **insured**.
>         (2) time, place and facts of the accident or **occurrence**.
>         (3) names and addresses of the claimants and witnesses.[1]

In the paragraph above, the bolded words "you," "us," "our," "insured," and "occurrence" are all defined in the Definitions sections of the Policy, pages A1 and G1. "You" is defined as "the named **insured** shown in this policy who resides at the **residence premises**" as well as "**your** spouse who resides at the same **residence premises**." The cover page of the Policy ("Elite Policy

---

[1] Curiously, both of the Nationwide letters to the Executrix of Ms. Hunt's estate (Exhibits C and E) quote different language for the notice provision than is contained in the Policy itself (Exhibit K). In the Nationwide letters, instead of the word "you" in the first sentence of Paragraph # 3 of the Policy, the word "insured" is substituted. In other words, the Nationwide letters state: "In case of a loss, the insured will perform the following duties that apply. You will cooperate with us in seeing that these duties are performed." This alternate language is nearly identical to the policy language in *Walton*, where the Court denied coverage to the insured, finding that the language of the notice provision required both the named insured and any additional insureds to perform the listed duties. *State Farm Fire and Casualty Co. v. Walton*, 244 Va. 498, 503, 423 S.E.2d 188, 191 (1992). In the present case, the Plaintiff's trial brief also quotes the "alternate" policy language used in the Nationwide letters. Nationwide's trial brief uses the language in the Policy before me at Exhibit K. It is unclear where the Nationwide claims adjuster or the Plaintiff's counsel obtained the "alternate" language. Since the only copy of the Policy before me is Exhibit K, which states that "you" must perform all duties, rather than the "insured," that language will govern.

Declarations") identifies the named insured as Laura C. Hunt. (There was no testimony at trial as to whether Ms. Hunt had a spouse living at the residence premises during the operative time.) The Munchenbachs are included in the Definitions section on page A1 and in Section II, Liability Conditions, page G1, paragraph 5, as "insureds":

> "INSURED" means **you** and the following persons if residents of **your** household at the residence premises. . . .
> (b) **your** relatives;
> (c) any other person under age 21 and in the care of **you** and **your** relatives. . . .

An insurance policy provision requiring timely notice of an accident or occurrence is a reasonable contract provision. *State Farm v. Porter*, 221 Va. 592, 272 S.E.2d 196 (1980). Such a requirement is a condition precedent to liability coverage by the insurer and requires substantial compliance. *Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 223 Va. 317, 288 S.E.2d 469 (1982) (citing *Porter*, 221 Va. at 599, 272 S.E.2d at 196). No prejudice to an insurer needs to be shown when a breach of the notice requirement is substantial and material; however, an absence of prejudice may be considered in deciding whether the breach is substantial and material. *State Farm Fire and Casualty Co. v. Walton*, 244 Va. 498, 423 S.E.2d 188 (1992).

I find that the Policy explicitly required Ms. Hunt, and not the Munchenbachs or any other third party, to give notice of a loss as soon as practicable. "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989). When the policy language is unambiguous, the Court must not resort to rules of construction, rather it should apply the terms of the policy as written. *Walton*, 244 Va. at 499, 423 S.E.2d at 191.

The choice of words in an insurance policy is crucial. In *Craig v. Dye*, the Virginia Supreme Court interpreted an insurance policy provision that stated that, if the insured "refused" to notify the insurer of an accident,

coverage might be denied. *Craig v. Dye*, 259 Va. 533, 526 S.E.2d 9 (2000).[2] Notice was not given to the insurer for more than two years and the insurer argued that the insured's *failure* to give notice warranted denial of coverage under the policy's notice provision. *Craig*, 259 Va. at 537, 526 S.E.2d at 12. The Court disagreed, finding it "significant" that the insurer used the verb "refuse" in the policy rather than the verb "fail." *Id.* at 538. Since there was no evidence of any "refusal" to act (only a mere "failure" to act) by the insureds, the Court ruled that the insurer could not deny coverage. *Id.*

Similarly, in *Walton*, the policy provision regarding notice stated in the first sentence that the insured would perform certain duties and, in the following sentence, stated that the named insured would cooperate with the insurer to see that the duties were performed. *Walton*, 244 Va. at 503, 423 S.E.2d at 191. The insured argued that the second sentence limited the performance of the listed duties to the named insured only and relieved the additional insured of any such responsibility. *Id.* The Court disagreed and pointed out that the policy provision at hand was "unambiguous" and thus should be applied as written. *Id.*

In the case at hand, I find that the Nationwide Policy provision J1 is unambiguous and therefore must be applied as written. The word "you" is clearly defined as the "named insured." Contrary to Nationwide's contentions, the Policy does not require the Munchenbachs to give notice in the case of a loss. The Policy requires only that notice be given by "you," in other words, the named insured, Ms. Hunt. The Policy does not require that notice must be given by any other insureds, in other words, the Munchenbachs. Had Nationwide wished to require that any insured as defined in the Policy give notice to be entitled to liability coverage, it could have done so. However, it did not do so here.

Were the Munchenbachs required to give notice under the Policy, I find that they failed to give notice as soon as practicable. Evidence at trial showed Debra's experience with the insurance industry, having worked for another insurance company and having made several claims herself for unrelated incidents. In addition, it is clear that Debra knew of the Policy and deliberately

---

[2] The exact language of the policy provision stated: "These are the things you must do for us. We may not provide coverage if you refuse." It is noteworthy that the Court found it important to give in endnote # 3 the precise definition of the word "you" as used in the policy provision. In the *Craig* policy, "you" was defined as both the named insured as well as any of the named insureds' relatives who were residents of the named insureds' household. In the Nationwide Policy at hand, "you" is defined merely as the named insured and the named insured's spouse.

chose not to report the incident to Nationwide for over eight months. In the interview conducted by Nationwide (Exhibit H), Matthew stated that he thought that all his family's possessions would be covered under "Laura Hunt's homeowner insurance" but he did not mention any liability insurance coverage. At trial, he stated he had no knowledge of the Policy. However, there was evidence presented at trial that Matthew was present when Debra stated to Mr. Salehi "we have insurance." In any event, Matthew relied on Debra to act for him at his own peril. I find that Matthew either knew or should have known of the potential of insurance.

However, the fact that the Munchenbachs failed to give notice to Nationwide within a reasonable time is immaterial. Under the clear, unambiguous language of the Policy, notice was required to be given only by the named insured, Ms. Hunt, and not by any of the additional insureds, the Munchenbachs. Since the Policy requires only the named insured to give notice, we must therefore turn to whether Ms. Hunt has failed to give notice "as soon as practicable." In *Porter*, the Court determined that "whether notice of an accident has been given to the insurer `as soon as practicable' is one for the fact-finder to determine." *Porter*, 221 Va. at 597-98, 272 S.E.2d at 199. Essentially, the requirement to give notice "as soon as practicable" means that "notice must be given within a reasonable time after the accident [and in order to] determine the reasonableness of a delay in giving the required notice, the facts and circumstances of each particular case must be considered." *State Farm Mutual v. Douglas*, 207 Va. 265, 148 S.E.2d 775 (1966). Indeed, as cited in Nationwide's Trial Brief, the *Virginia Model Jury Instructions* regarding notice to an insurer state that:

> The requirement in a policy of insurance that notice of the loss be given as soon as practicable means that notice must be given within a reasonable time from the date of the loss under all of the circumstances of the case. It does not mean that notice must be given immediately or instantaneously. If there is a reasonable explanation for the insured's delay in notifying the insurance company, the insured is not barred from a recovery because of the delay.

*Virginia Model Jury Instructions, Civil*, Instruction 47.200, II-555, 1998 Repl. Ed. with 2004 Supplement.

Testimony at trial indicated that Ms. Hunt never was made aware of the incident before her death. Testimony at trial and transcripts of the Nationwide interviews reveal Ms. Hunt to be in failing health, attended by two nurses

twenty-four hours a day. Debra testified that Ms. Hunt was not told of the incident due to her age and health. Since Ms. Hunt was never made aware of the incident, it cannot be said that she failed to report it to Nationwide "as soon as practicable." She could not report that which she did not know. Nor is there any evidence before me that Ms. Hunt was negligent in failing to discover the incident.

Similarly, the only evidence before me that Ms. Hunt's Executrix was aware of the incident is the letter that Debra wrote Ms. Guiliano on October 9, 2003, informing Ms. Guiliano of the shooting in February and the fact that Nationwide was investigating the incident. Eleven days later, the Executrix was informed by Nationwide itself that it was investigating the incident. There is no evidence that Ms. Guiliano attempted to contact Nationwide from October 9 to October 20, 2003, to report the incident. However, given that Ms. Guiliano was made aware that Nationwide was on actual notice of the incident and indeed was investigating the incident, I find that such notice was not necessary. The plain language of the notice provision does not require that notice be given by a named insured's personal representative after death. Even assuming that the Policy required the named insured's personal representative to give notice in event of a loss, I find that a delay of eleven days is not unreasonable given the facts and circumstances of this case.

Since Ms. Hunt died before she could give notice and since, under the terms of the Policy, only Ms. Hunt was required to give notice, I find that Nationwide may not deny coverage to the Munchenbachs. I find that coverage for them exists.