# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Nationwide Mutual
Fire Ins. Co.

v.

Todd W. Freeman

February 21, 2014

Case No. (Civil) CL11-1367

BY JUDGE JOHN W. BROWN

This declaratory judgment matter came before the Court for trial on January 28, 2014. For the reasons that follow, the Court grants declaratory judgment to Nationwide Mutual Fire Insurance Company on the basis that the defendant and his family failed to provide notice of the incident for which the defendant seeks coverage "as soon as practicable" in accordance with the requirements of the subject homeowners' policy.

## I. *Factual and Procedural Background*

This is an action in which Nationwide seeks a declaration that it owes the defendant, Todd W. Freeman, no liability coverage under his mother's homeowners' policy regarding an underlying personal injury claim. Nationwide maintains that (1) the defendant's assault of another individual (the victim) is not an "occurrence" under the policy because it did not result from an accident; (2) coverage is excluded because the defendant intentionally hit the victim; and (3) the defendant failed to timely notify the insurance company of the underlying incident, leading to the failure of a condition precedent.

The declaratory complaint alleges that the defendant intentionally punched the victim, Robert Justin Hughes, in the face at a party on November 28, 2008. On November 5, 2010, the victim filed a civil suit against the defendant, seeking damages for injuries resulting from the

punch. It is undisputed that, on December 14, 2010, the defendant's mother contacted Nationwide to report the suit.

The defendant's parents, Jalene Bergstresser and Homer Freeman, divorced in the mid-1990s. At no relevant time did the defendant's parents have a joint Nationwide insurance policy of any type.

The Nationwide homeowners' insurance policy of the defendant's mother provides in relevant part:

> 3. In case of an occurrence, you must perform the following duties. You must cooperate with us in seeing that these duties are performed.
>> (a) Give notice to us or our agent as soon as practicable setting forth:
>>> (1) identity of the policy and insured;
>>> (2) time, place, and facts of the accident or occurrence;
>>> (3) names and addresses of the claimants and witnesses.

At the bench trial in this matter, the plaintiff presented evidence that its local agent maintains automated call logs as a matter of corporate policy; if an insured calls with an insurance-related question, the Nationwide representative who fields the call for the agency creates a record, by filling in blocks and spaces present in the software with the details of the call, which, once entered, cannot be altered. Nationwide presented evidence and argument that despite the mother's (and father's) claims that each called the company in early January 2009, no log of any call existed. The defendants did not produce their own phone records evidencing such calls. The company, however, did introduce a call log from May 7, 2009 (Plaintiff's Exhibit 6), showing a call from the defendant's father, who lived at a separate address from his son at the time of the incident, as he does today. The log reads:

> Re: PUL [Personal Umbrella Liability policy] interest – NI [Named Insured] called in with questions re getting a PUL. He advs me, his son was involved in a fight back in Oct. of last year and now his son is being sued for damages. I advs I can do a quote and talk to Undr. to see if they will make any exceptions to issuing policy with current situation.

[*Sic passim.*]

It should be noted that the substance of the alleged conversation of the father with Mr. Avery's office in May of 2009 is consistent with the content of the conversation that the father testified he had with Avery's office in January of 2009.

The defendant countered with evidence that his parents hired attorney Robert Wegman on January 9, 2009, for the underlying criminal assault and battery charge, and his father discussed potential parental liability for the incident at that time. The father testified that he called the insurance agent in Mr. Avery's office "the next day or so" regarding umbrella insurance to protect himself, and the agent with whom he spoke said that she did not think he could retroactively purchase such coverage for the incident, but the agent indicated that she would check with the underwriter and contact him. Mr. Freeman also testified that the agent interjected that it did not appear that his wife had an umbrella policy either.

The defendant's mother, however, testified that she called Nationwide in January 2009 (the same day or the day after her husband's call) about her husband's conversation with Nationwide. She testified that she never asked about her homeowners' policy as possible coverage, since she assumed that a fight would not be covered.

Furthermore, Mr. Avery, the Nationwide agent involved, who had known the mother and father (whom he called "Rocky") for years, testified that, any time a claim comes into his office, one of two things occurs: (1) the policyholder or claimant is given Nationwide's 1-800 number to report the claim; or (2) the agent will set up a three-way conversation with the claimant and the Nationwide claims office. He additionally testified that his office could not deny coverage, as such a decision is left to the Nationwide headquarters. If there is an issue, Mr. Avery testified that he always advises claimants to just report their claims to Nationwide.

## II. *Analysis*

Initially, the Court must determine whether the above-described alleged notice or notices was or were provided "as soon as practicable" so as to comply with the terms of the policy.

"[T]he duty to notify the insurer arises when an incident occurs 'which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy'." *Nationwide Mut. Fire Ins. Co. v. Overstreet*, 568 F. Supp. 2d. 638, 648 (E.D. Va. 2008) (quoting *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 504 (1992)). The Supreme Court of Virginia has construed the language "as soon as practicable" to mean "within a reasonable time after the accident" depending "upon the facts and circumstances of each case." *Dabney v. August Mut. Ins. Co.*, 282 Va. 78, 88 (2011). Whether notice was provided within the time contemplated by an insurance policy is therefore typically a question for the finder of fact, but becomes a question of law "when the facts are undisputed and certain." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Douglas*, 207 Va. 265, 268 (1966)); *see Mason & Dixon Lines, Inc. v. United States Cas. Co.*, 199 Va. 221, 225 (1957) (citation omitted).

The Supreme Court of Virginia has found delays to violate insurance policy notice provisions as a matter of law where such delays stretched for periods of years. *See Walton*, 244 Va. at 500–01, 504–05 (two-year delay); *Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 487–88, 490 (1984) (seven-year delay).

Where delays are considered by the finder of fact, considerably shorter periods have been found to violate the governing notice requirements. *See, e.g., Lord v. State Farm Mut. Auto. Ins. Co.*, 224 Va. 283, 288 (1982) (173 days); *Liberty Mut. Ins. Co. v. Safeco Ins. Co.*, 223 Va. 317, 324 (1982) (51 days). *But see State Farm Fire & Cas. Co. v. Scott*, 236 Va. 116, 123–24 (1980) (notice provided 75 days after occurrence considered timely).

The parties presented conflicting evidence regarding notice. When viewed in the light most favorable to the defendant, the evidence indicates a delay of approximately two months; however, when viewed in the light most favorable to the plaintiff, it indicates a delay of over two years.

The underlying incident was a serious assault that should have put the defendant and his mother, with whom he lived, on notice of significant injuries to the victim, particularly after the trial of the criminal matter in the first part of January 2009. The injured party, Robert Justin Hughes, testified that his injuries were, in part, a broken nose and three fractures to his face. His medical expenses were over $30,000, pursuant to the testimony in the criminal trial, and the court ordered restitution for medical expenses upon Todd Freeman's conviction.

The Court finds that the earliest potential notice to the insurance company, supported by credible evidence, occurred on May 7, 2009, when the defendant's father called the insurance company to determine if he had an umbrella policy that would afford him coverage for his son's actions in November 2008. (*See* Plaintiff's Ex. 6.) This notice, however, is wholly insufficient; the policy required the provision of (1) the "identity of the policy and insured"; (2) the *"time, place, and facts of the accident or occurrence"*; and (3) the *"names and addresses of the claimants and witnesses."* (Emphasis added.) At most, the father's phone conversation with a Nationwide representative could have provided a skeletal statement of the "time, place, and facts of the accident or occurrence"; however, no policy was ever identified as being the one with respect to which the call was being made.

Additionally, despite the assertion that the fight that his son was involved in the previous October raised the possibility in the father's mind of a suit for personal injuries against him, it does not approach the necessitous facts to fully apprise the insurance company of the "facts" of the incident; nor does it address in any way the names and addresses of the victim and witnesses, or that he asked on behalf of his former wife that Nationwide get involved under her homeowners' policy. This notice was therefore inadequate under the plain terms of the policy.

The plaintiff in the underlying action served the complaint on the defendant on December 9, 2010, and Nationwide received the notice contemplated by the policy on December 14, 2010. Under the facts and circumstances of the instant case, the defendant did not provide notice "as soon as practicable," given his intervening juvenile court conviction and the passage of two years between the incident and provision of notice. The Court further finds that there are no extenuating circumstances for the delay. *See Overstreet*, 568 F. Supp. 2d at 644. Noncompliance with the notice provision was both substantial and material. *See Walton*, 244 Va. at 504. Accordingly, there is a failure of a condition precedent, and the Court holds that the plaintiff owes the defendant no liability coverage in the underlying matter. *See id.* at 500–01, 504–05; *Overstreet*, 568 F. Supp. 2d. at 648.

Assuming, for the sake of argument only, that, in the father's conversation, he had mentioned the name of the claimant, the date of the assault, and the nature of the injuries, as well as the names and addresses of the witnesses who testified in the juvenile court assault and battery trial (and any others Todd Freeman knew of), the Court may have reached a different conclusion. Indeed, even if he could not recall the full names and addresses of the witnesses at the trial, the reporting of attorney Robert Wegman's address and cell phone number along with the defendant's information may have been a sufficient lead to allow Nationwide to gather all the information required under the policy.

In light of this disposition, the remaining questions regarding whether the defendant's actions constituted an "occurrence" under the policy are rendered moot, and the Court declines to address them. *See Hale v. Maersk Line, Ltd.*, 284 Va. 358, 381, n. 5 (2012).